IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Harris, | ) No. CIV 04-1568-PHX-EHC (DKD) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Ivan Bartos, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE EARL H. CARROLL, U.S. DISTRICT JUDGE:

Anthony Harris filed a timely, fully exhausted petition for writ of habeas corpus on July 30, 2004 (Doc. #1). He raises five grounds: 1) trial counsel was ineffective by not impeaching a state witness on rebuttal; 2) trial counsel did not request a mistrial or the suppression of certain evidence based upon the State's failure to preserve exculpatory evidence; 3) trial counsel neglected to argue the State's failure to utilize the copiers' "fingerprint pattern" to link the copiers to the counterfeit bills; 4) trial counsel did not investigate whether the copiers were equipped with anti-counterfeit detection technology, and thereby neglected to learn that the State had disposed of the copiers; and 5) appellate counsel did not withdraw from representation when notified of Harris's intent to assert the ineffective assistance of the Public Defender's Office, and neglected to raise requested claims on direct appeal. For the reasons stated below, the Court recommends that Harris's petition be denied and dismissed with prejudice.

## BACKGROUND

The facts surrounding Harris's convictions for two counts of forgery and one count of possession of a forgery device, and the trial court's imposition of concurrent 12 and six year prison terms, are summarized in the court of appeals' memorandum decision:

> Glendale Police Officer Brandon Blanco testified that on December 21, 1996, he responded to an emergency call involving several men with weapons in a condominium complex. Upon his arrival, he encountered and detained two men, including appellant, who were arguing in a condominium doorway. When additional officers arrived, Officers Blanco and Garcia proceeded to appellant's condominium, unit #209, from which the emergency call originated. The callers, appellant's girlfriend and a friend, were found next door in unit #210. The two women told the officers that they had opened their front door and found four or five men with guns in appellant's condominium.
>
> The officers, believing that only two of the armed men had been detained, searched units #209 and #210 for additional suspects. Finding nothing in unit #210, the officers searched appellant's condominium, which appeared to have been ransacked. Furniture and appliances were knocked over, stacks of bundled money and a green leafy substance that looked like marijuana strewed the floor.
>
> After searching each room of appellant's condominium, the officers reached the locked garage. Unable to find a key, Sergeant Trammel, the supervising officer, forcibly opened the door and found inside a copy machine and a large covered item located in the middle of the garage. Because the covered item, which turned out to be another large copy machine, was large enough to conceal a hiding person, Sergeant Trammel removed the cover. On top, he saw a stack of $100 bills, a pack of copy machine paper, and paper with several different colors and the outline of paper money on it. Lifting one of the $100 bills to see if it contained a watermark, Sergeant Trammel saw that it was blank on the other side. Upon finding this evidence, Sergeant Trammel immediately ordered everyone out of the condominium, contacted his superior, and waited until a search warrant was obtained.
>
> During the subsequent search of appellant's condominium and garage, officers found counterfeit money in each room, some of it in a dresser drawer that also contained appellant's driver's license. Police also found a paper cutter, uncut counterfeit copies, stacks of copy paper, toner cartridges with colors that match those typically used in making counterfeit money, and nylon security threads that are used in valid currency.
>
> Detective Jones, who interviewed appellant at the scene prior to the search and again later at the police station, testified that during the first interview, appellant stated that he knew nothing about any counterfeiting or the copy machines in the garage and that his fingerprints would not be found on the copiers. When confronted with the evidence found during the search in the second interview, however, appellant admitted to using counterfeit money to purchase marijuana in two separate transactions, stating that the drugs were to be sold later for "real" cash. Appellant also indicated that, although he had never made any counterfeit money, he knew it was being made and by whom and that his fingerprints would be found on one of the

    copy machines, "because he had done some work on it."  At trial, Diana Molina, an identification supervisor for the Glendale Police Department, testified that appellant's latent fingerprints were found on one of the copier glass bays and on that copier's lid.
(Doc. #1, Attachment 1, memorandum decision at 2-4).

Appellate counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), indicating to the court of appeals that she had searched the record on appeal and had found "no arguable question of law that is not frivolous" (Doc. #9, Exh D at 10).  She asked the court of appeals to search the record for fundamental error, and, at Harris's request, listed the following as issues for appellate review:

  1. Statements were involuntary;

  2. When the prosecutor went to the grand jury, the prosecution did not possess the copy machine;

  3. Ineffective assistance of counsel;

  4. Newly discovered material facts;

  5. County Attorney Jon Wendell had witnesses Chuck Jones and William Sentner produce false statements;

  6. Agent Sentner wanted to interview Harris but was notified by Glendale police officers that Harris had refused to speak without the presence of an attorney;

  7. Agent Sentner made no reference in his report to the copy machines being found after the search warrant was obtained;

  8. The copy machines would leave a special signature;

  9. Sentner testified as an expert on color copiers but he never examined the copiers himself;

  10. Officer Jones' testimony violated Harris's rights under the Fifth and Sixth Amendments;

  11. There were no witnesses to Officer Jones' interview with Harris;

  12. The evidence did not coincide with the alleged statements;

  13. There was no way to connect Harris to the counterfeit money;

  14. Officer Jones did not turn in his report until December 26, 1996;

15. At the first interview, Harris requested an attorney and refused to answer questions until after an attorney was present;

16. The judge decided the voluntariness issue and left the invocation of rights for the jury; and

17. It was Harris's word against Officer Jones' word.

(*Id.* at 10-11). Harris was granted additional time to file a supplemental brief, but he chose not to do so. In its memorandum decision, the court of appeals addressed the issues raised by Harris and concluded that none had merit (Doc. #1, Attachment 1). In his petition for post-conviction relief, Harris raised *inter alia* the ineffective assistance claims that he now reurges in his federal petition (Doc. #9, Exh F). The trial court dismissed his post-conviction petition, finding as follows as to his ineffective assistance claims:

> As [to] Defendant's claims of ineffective assistance of trial and appellate counsel, Defendant has filed to show counsel's performance was deficient or that there was a reasonable probability the outcome of the case would have been different, i.e. no showing of prejudice.

(Doc. #1, Attachment 2)

The petition for review from the trial court's denial of post-conviction relief was denied by the court of appeals (*Id.*, Attachment 3).

**DISCUSSION**

Harris first argues that trial counsel was ineffective for failing to impeach Detective Jones regarding his testimony that Harris made incriminating statements during his interview with Jones. Harris contends that the evidence shows that Detective Jones and Sergeant Lekan were interviewing someone else at the time Harris supposedly made the confession. He therefore contends that trial counsel should have recalled Sergeant Lekan to rebut Jones' testimony.

The record reflects that Sargeant Lekan testified before Detective Jones, and that trial counsel did cross-examine Sargeant Lekan about the order of the interviews, and the fact that in order to keep continuity, he and Detective Jones decided to separate some of the interviews; Sargeant Lekan testified that he did not interview Harris or speak with him at all. Detective Jones testified about his two interviews with Harris: one transpired at 10:00 p.m.

while Harris was seated in the back of a police car at the scene, and a later one took place at 6:00 a.m. the next morning in the booking area at the police station. The second interview occurred following Detective Jones' participation in the execution of a search warrant at Harris's condominium, including the garage, where the copiers were seized. Detective Jones testified that no one else was present at the second interview. He also testified that Harris never asked for an attorney, never refused to answer questions, and during the second interview made statements which were inconsistent with his earlier interview and were also incriminating. Agent Sentner testified concerning his interviews, and was cross-examined about their chronology, and which officers were present during those interviews. He also testified that he never interviewed Harris because of information he had received that Harris had invoked his right to counsel.

Harris testified that Jones questioned him at the scene, and that Lekan, Sentner and Jones were all present at some point during the second interview at the station. On rebuttal, Jones testified that he interviewed Harris alone on both occasions, and Agent Sentner reiterated that he did not participate in any interview with Harris. The Court agrees with the State that it would have served no purpose to recall Lekan on rebuttal when both Lekan and Sentner had testified that they had no contact with Harris. Based upon the evidence before the jury, and the cross-examination by defense counsel of Jones, Lekan and Sentner, the trial court reasonably applied *Strickland*[1] in failing to find counsel's performance was deficient or that there was a reasonable probability the outcome of the case would have been different.

Harris also argues that counsel was ineffective for failing to request exclusion, suppression or mistrial upon discovery that the State had disposed of the copiers prior to the charges being refiled in state court.[2] The copiers were not disposed of, but released to a Canon representative, identified by serial number. In addition, in light of Harris's expressed

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] The charges were initially filed in federal court, but dismissed in part because the search warrant was issued by a Justice of the Peace, not a recognizable state court of record, and evidence obtained as a result would be inadmissible . *See* Doc. #24, Exh P at 95-96.

- 5 -

1 desire to contest the copiers' counterfeiting capability, it would have been inconsistent for
2 trial counsel to argue for suppression of the copiers. Finally, considering the evidence before
3 the jury of Harris's fingerprints on one of the copiers, and stacks of counterfeit bills on the
4 other, and his incriminating statements made to Detective Jones and general lack of
5 credibility on the stand, he has shown no prejudice, and the state court's ruling was a
6 reasonable application of *Strickland*.

7 Next, Harris contends that trial counsel should have advised the jury that the State
8 failed to present fingerprint pattern evidence linking the copier to the counterfeit bills. In
9 order to convict Harris of a violation of A.R.S. § 13-2002(A)(1),with intent to defraud, either
10 falsely making, completing or altering a written instrument, or knowingly possessing a
11 forged instrument, and § 13-2002(A) (2), criminal possession of a forgery device, the State
12 was not required to link the two offenses. In addition, it is within the broad range of
13 competent representation for trial counsel to not make an argument that would dilute Harris's
14 primary theory of defense: that he was innocent and had been framed. *See United States v.*
15 *Stern*, 519 F.2d 521, 524-25 (9th Cir. 1975). .

16 In a related argument, Harris contends that counsel should have investigated whether
17 the copiers were equipped with anti-counterfeit detection technology. However, such an
18 investigation would not have produced any relevant evidence. The items recovered from
19 Harris's condominium, seized pursuant to a search warrant, proved that counterfeit bills had
20 been forged and circulated to individuals who recognized that they were not genuine
21 currency. In addition, as the testimony at trial indicated, anti-counterfeiting technology
22 consists of a unique identifying signature pattern or splatter mark that is imprinted on every
23 copy made, which allows the copier to be traced. It does not, as its name might suggest,
24 recognize genuine currency and prevent it from being reproduced. *See* Doc. #24, Exh P.,
25 R.T. 8/27/98 at 84-86. The trial court reasonably applied clearly established Federal law
26 because the copiers were not destroyed, and in any event an examination of them would not
27 have produced exculpatory evidence. *See Arizona v. Youngblood*, 488 U.S. 51 (1988).

28

1  Finally, Harris argues that appellate counsel was ineffective for not withdrawing from
2  representation when notified that Harris would pursue an ineffectiveness claim against the
3  Public Defender's office, and for failing to raise the requested issues on appeal. Harris
4  correctly did not ask counsel to withdraw until he filed his Notice of Post-Conviction Relief;
5  counsel in turn immediately moved to withdraw. Both events occurred *after* the completion
6  of direct review. *See* Doc. #24, Exh T, U. Ineffective assistance claims will not be addressed
7  on appeal, and can only be asserted in post-conviction proceedings. *State v. Spreitz*, 202
8  Ariz. 1, 3 (2002). His argument that counsel was ineffective for filing an *Anders* brief is also
9  without merit; counsel is not required to present frivolous claims. *Anders*, 386 U.S. at 744-
10 745. The court of appeals reviewed the record for fundamental error, and found none.

11 **IT IS THEREFORE RECOMMENDED** that Anthony Harris's Petition for Writ
12 of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1).

13 This recommendation is not an order that is immediately appealable to the Ninth
14 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
15 Appellate Procedure, should not be filed until entry of the district court's judgment. The
16 parties shall have ten days from the date of service of a copy of this recommendation within
17 which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules
18 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within
19 which to file a response to the objections. Failure timely to file objections to the Magistrate
20 Judge's Report and Recommendation may result in the acceptance of the Report and
21 Recommendation by the district court without further review. *See United States v. Reyna-*
22 *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual
23 determinations of the Magistrate Judge will be considered a waiver of a party's right to
24 appellate review of the findings of fact in an order or judgment entered pursuant to the
25 Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

26 DATED this 30th day of May, 2006.

27
28

David K. Duncan
United States Magistrate Judge

- 7 -