Anthony Harris #85014
Arizona State Prison Complex
Lewis Complex / Bachman Unit
P.O. Box 3500
Buckeye, Arizona  85326

FILED ___ LODGED
RECEIVED ___ COPY

JUN 1 2 2006

CLERK U.S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ S DEPUTY

United States District Court

District of Arizona

Anthony Harris,

    Petitioner,

  - vs -

Ivan Bartos, et al.,

    Respondents.

Case No. CV-04-1568-PHX-EHC (DKD)

Objections To The Magistrate Judge's Report And Recommendation

To The Honorable Earl H. Carroll, U.S. District Judge:

  Comes now the petitioner, Anthony Harris, in pro se and here by objects to the Magistrate Judge's Report and Recommendation to petitioner's Petition for Writ of Habeas Corpus. For the reasons set forth in the Memorandum of Points and Authorities.

I

Factual Background

  On May 30, 2006 the Honorable David K. Duncan filed a Report and Recommendation, recommending petitioner's Petition for Writ of Habeas Corpus

(1)

be denied and dismissed with prejudice.

# II

## Argument.

The Honorable Judge David K. Duncan first discussed petitioner's ground: trial counsel was ineffective by not impeaching Detective Jones on rebuttal. Consequently the Court agreed with state that it would have served no purpose to recall Sergeant Lekan on rebuttal when both Lekan and Sentner had testified that they had no contact with the petitioner. Petitioner argues that by recalling Sergeant Lekan on rebuttal to impeach Detective Jones, would have brought to light the evidence of Detective Jones interviewing a Mike Morrow on the morning of December 22, 1996 at 6:00 a.m. and not interviewing the petitioner and receiving the monumental incriminating alleged statements.

The record on appeal establishes that Sergeant Lekan testified before Detective Jones because of being Lead Case Agent, and on cross examination discussed the chronological order of the interviews he conducted. (Respondent's Exhibit N, R.T. 8/25/98, at 56-75.)

Sergeant Lekan interviewed Mike Morrow at approximately 10:30 p.m. on December 21, 1996, but he refused to answer any questions. (Id. at 68, 74.) At approximately 5:40 a.m. the next morning of December 22, 1996, Sergeant Lekan interviewed Monique McKee at the police station. (Id. at 72.) Present during the interview were Detective Jones and Agent Sentner. (Id.) At 6:15 a.m., Detective Jones notified Sergeant Lekan that Mike Morrow would speak to him. (Id.) Sergeant Lekan directed Officer Palomino to take a written statement from Michael Morrow. (Id. at 72-73 and Police Report

Lekan Scott, 96-116204, 12/24/96, pp. 9-10.) Thereafter, Sergeant Lekan interviewed Michael Morrow. (Id. at 73.) Initially both Detective Jones and Agent Sentner were present during Michael Morrow's interview. (Id.)

On direct, Detective Jones testified that he was assigned to interview petitioner at the scene. (Respondent's Exhibit N, R.T. 8/25/98, at 79.) Hours later, Detective Jones proceded to the police department to allegedly interview the petitioner a second time at 6:00 a.m. on December 22, 1996. (Id. at 137.) Detective Jones alleges that he confronted petitioner with the evidence recovered, conveyed that he surmised that it was a "drug rip-off" and reminded petitioner that he had been advised of the Miranda warnings. (Id.) Petitioner answered that Detective Jones' "drug rip-off" assumptions were partially correct, and stated that he and Dre purchased drugs with counterfeit bills intending to sell the drugs for "real cash". (Id. at 139-140.)

Under cross-examination Detective Jones testified that petitioner's second alleged interview took place in the jail booking area of the Glendale Police Department at 6:00 a.m. on December 22 and was not observed by any other investigators. (Respondent's Exhibit O, R.T. 8/26/98, at 5-28.) Trial counsel asked Detective Jones, if on the morning of December 22, 1996 if he recalled speaking to a Michael Morrow at the police station at all? Detective Jones replied, "No." (Id. at 24.)

Detective Jones claiming to have interviewed petitioner on the morning of December 22, 1996 at 6:00 a.m. is a contradiction to Lead Case Agent Sergeant Lekan's account of Detective Jones initiating and interviewing a Michael Morrow on the morning of December 22, 1996 at 6:00 a.m. with Officer Palomino being brought in to witness Morrow's signed statement since Morrow's had invoked his rights not to speak without an attorney present. (Respondent's Exhibit N, R.T. 8/25/98 at 72-73.) In light of this evidence it was not possible for petitioner to have given those monumental incriminating

(3)

statements to Detective Jones on the morning of December 22, 1996 at 6:00 a.m., because Detective Jones initiated and interviewed a Michael Morrow with witnesses present for the interview. (ID. at 72-73) Under cross-examination Detective Jones did not recall interviewing a Michael Morrow on the morning of December 22, 1996 at 6:00 a.m. because Mr. Morrow was not in his report. (Respondent's Exhibit O, R.T. 8/26/98 at 24.)

Trial counsel during his cross, interviewed Sergeant Lekan on 8/25/98 and interviewed Detective Jones on 8/26/98. With police reports in-hand trial counsel discovered this monumental evidence. But trial counsel failed to acknowledge and compare Detective Jones' mistaken identity of the petitioner to Michael Morrow, who in reality being interviewed by Detective Jones on December 22, 1996 at 6:00 a.m. (R.T. 8/25/98 at 72-73, 8/26/98 at 24.) This evidence is of such magnitude that if brought to the attention of the Court, the Court would have been compelled to order a mis-trial. The Court had ruled during the Voluntariness Hearing, the petitioner had no evidence to support petitioner's assertions of never being interviewed by Detective Jones on the morning of December 22, 1996 at 6:00 a.m. Thereafter the Court left the invocation of rights for the jury and it was petitioner's word against Detective Jones' word. The incriminating statements alleged by Detective Jones lead the jury to believe the petitioner was ripping off drugs using counterfeit money and selling the drugs for genuine money. This clearly tainted the whole outcome of the trial, therefore causing prejudice under Strickland.

    U.S. Young, 17 F.3d. 1201 (4th Cir. 1994)
> We review District Court's decision not to
> grant a motion for a new trial for abuse of
> discretion. United States v. George, 960 F.2d

97, 101 (9th Cir. 1992); United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989). However, "a conviction obtained by knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have effected the judgement of the jury. United States v. Agurs, 427 U.S. 97, 103, 96, S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)

## II

### Trial Counsel's Failure To Present Issue of State's False Disclosure of Material Exculpatory Evidence.

Under Rule 15, Arizona Rules of Criminal Procedure, all discovery materials presently available are to be made available to the defendant or his counsel. The State made aware to trial counsel the disclosure of the two Canon copiers in the Notice of Discovery. When the state filed their disclosure statements the state had the sole knowledge of not having possession or control of the two Canon copiers listed under their Notice of Discovery statement filed on 10-7-97. (Respondent's Exhibit 5, Discovery Notice.) In order for the State to disclose the copiers under State Discovery rules and Federal Rules of Evidence, it was the state's duty to provide a location and phone number to where the copiers would be made available for examination and testing in order to claim possession or control. Petitioner argues the State claim of releasing the copiers to a Canon representative without possessing a location or phone number to contact this Canon representative is a State and Federal Discovery violation. A copy of the Notice of Discovery was disclosed by the state 10-7-97, indicating all discovery material had been made

(5)

available on 8-26-97, (Respondents Exhibit 5, Discovery Notice (Id. p15)) My question to this Court and State is, who was the discovery items made available for? My point being the Maricopa County Public Defender's Office hadn't been appointed to represent the petitioner until 8-27-97. (Id.) Therefore depriving the petitioner with an opportunity to examine and test the copiers for authenticity of being forgery devices. In a attempt post-trial to locate the copiers in question, petitioner's sister Danielle Harris went to Glendale Police Department in an attempt to examine the copiers. It was at this point in time it was brought to light the copiers in question were disposed of on 1-14-97 to a Scott Goodwin of a Canon Copier Inc. without a location or phone number to be contacted. (Respondents Exhibit 8, Property Slip.) The failure to present the state Discovery Rule 15 and Brady violation to the Court of Appeals constitutes ineffective assistance of appellate counsel which seriously undermined the proper function of the adversarial process. Appellate counsel's failure to provide the petitioner with the trial record and pre-trial record, so petitioner could substantiate a colorable claim for new trial in a supplemental brief in propria persona, clearly establishes prejudice under Strickland. Furthermore the non substantiation of these claims to the Court of Appeals under Direct Appeal, caused the Court of Appeals to adjudicate issues of a non-substantiated nature when the evidence was clearly in the record and thus reviewable. This failure caused the Trial Court in petitioner's Post-Conviction relief proceeding to render these claims precluded because of the adjudication from the Court of Appeals; (Petitioner Exhibit 2)

# III

1. <u>Ineffective Assistance of Trial Counsel</u>
2. <u>Prosecutorial Misconduct</u>
3. 

Trial counsel, Roderick Carter clearly demonstrated ineffective assistance of counsel by his failure to attack the credibility and/or impeach Detective Jones on his testimony stating petitioner gave him incriminating statements on December 22, 1996 at 6:00 a.m. in the morning. Counsel knew of the Michael Morrow interview initiated by Detective Jones on the morning of December 22, 1996 because of his line of questioning during his cross examinations of Detective Jones and Sergeant Lekun. (Respondent's Exhibit O, R.T. 8/26/98, at 5-28.) Detective Jones expounded that petitioner's alleged second interview took place in the jail booking area of the Glendale Police Department at approximately 6:00 a.m. (Id. at 25-27.) Counsel asked Detective Jones, if on the morning of December 22, 1996, if he recalled speaking to a Michael Morrow at the police station at all? Detective Jones replied, "No." (Id. at 24.)
(Respondent's Exhibit N, R.T. 8/25/98, at 56-75.)

On 8/25/98, on cross-examination he discussed the chronological order of interviews Sergeant Lekun had conducted. Sergeant Lekun testified that he was assigned to interview Michael Morrow at approximately 10:30 p.m. on December 21, 1996, but he had refused to answer any questions without an attorney present. (Id. at 68, 74.) At approximately 5:40 a.m. on December 22, 1996 Sergeant Lekun again interviewed Monique McKee at the police station. (Id. at 72.) Present during the interview were Detective Jones and Special Agent Sentner. (Id.) At approximately 6:15 a.m. Detective Jones notified Sergeant Lekun that Michael Morrow would speak to him. (Id.) Sergeant Lekun directed Officer Palomino to take a written statement from Michael Morrow waiving his rights (Id. 72-73 and Police Report Lekun Scott, 96-116204, 12/24/96, pp 9-10.) Counsel had knowledge of this clearly exculpatory evidence of the conflicting accounts of who actually got interviewed on the morning of December 22, 1996 at 6:00 a.m. All this compelling evidence

(7)

leads to the conclusion that Detective Jones interviewed Michael Morrow on that morning and not the petitioner by, 1) The Secret Service Agent Sentrec had no knowledge of the alleged statements prior to trial, 2) Sergeant Leken was determined the Case Agent, who assigned other officers their duties of the investigation. (Respondent's Exhibit N. A.T. 8/25/98, at 56-25 3) Detective Jones notifying Sergeant Leken of Michael Morrow's willingness to talk at approximately 6:15 a.m. on December 22, 1996. (ID. at 72-73), and 4) the witness, Officer Palomino was called in to witness Morrow signing his statement. All of this while allegedly obtaining incriminating statements from the petitioner. If this evidence was brought to the light by counsel at the voluntariness hearing prior to trial, the judge would have been compelled to suppress those statements obtained by Detective Jones and dismiss the count of Forgery, possession of counterfeit money.

Trial counsel demonstrated ineffective assistance of counsel by his failure to challenge the admissibility of the copiers. Petitioner had explained to Mr. Carter that federal counsel had brought to the light the incapability of those canon copiers being able to produce counterfeit money. This was the true reason the federal charges stemming from the same incident were dismissed. Mr. Carter failed to investigate the copiers and allowed the state to indict and convict the petitioner with evidence that was never examined by the state themselves. The state alleged that petitioner's fingerprints were found on a piece of copier glass but in all actuality those fingerprints were found on some computer PC parts. The glass in question was not present at trial nor were the parts the glass was found with. The state used this evidence of fingerprints and copiers to prove their case without any challenge of admissibility from counsel. The failure of counsel to investigate and substantiate a motion for dismissal of counts I, Forgery and count II, Possession of Forge Device of the indictment with the violations of Discovery, Rule 15 and Federal Rules of Evidence clearly establishes prejudice under Strickland. Trial counsel's duty was to investigate and insure a fair trial, by holding the state responsible for the evidence listed under their Discovery Notice and challenging the admissibility of the evidence.

(8)

1. This cannot be misconstrued as trial strategy when fundamental Sixth Amendment
2. rights are being violated. Constitutional rights must be protected before any trial
3. strategy can be utilized.
4.    Discovery, Rule 15 of the Arizona Rules of Criminal Procedure and Federal Rules of
5. Evidence are rules formed by our state and nation highest courts to insure both sides
6. have the opportunity to examine evidence from the opposing side. Trial counsel informed the
7. petitioner, prior to trial, that he planned on doing a physical demonstration of the copiers
8. to the jury, not producing money by placing $20.00, $50.00, and $100.00 bills on the copiers
9. to demonstrate how the anti-counterfeiting device would enable the copiers from
10. producing that money. Respondents argue that the copiers were not disposed of because
11. the state presented evidence that it had impounded the copiers, but "did not bring them to
12. court," because of their inability to transport them. (Respondent's Exhibit N, R.T. 8/25/98, at
13. 121.) Next respondents uses the Glendale Evidence property slip as if it was provided by
14. the state, to claim that the copiers were still very much identifiable and in existence
15. as of the day of trial. The Glendale Evidence property slip was discovered after trial
16. by the petitioner's sister Daniella Harris in an attempt to locate the copiers to prove
17. the petitioner's innocence. (Respondent's Exhibit R.) Please view the message from
18. the property room clerk to Danielle Harris. (Id.) This document was never filed with
19. the court, prior to indictment or trial and does not contain the location or phone
20. number in order to locate the copiers. Therefore, the copiers were not identifiable and
21. not in existence on the day of trial or before trial and must be considered disposed
22. of. These copiers were disposed of on January 14, 1997 without mention to where
23. the copiers could be located for examination, 6 months prior to the refiling of these
24. charges. The prosecution had a duty to notify the petitioner or counsel of the
25. whereabouts of the copiers in their notice of Discovery, Rule 15. Pictures are not
26. sufficient to satisfy disclosure rules without, first the opportunity to examine the
27. evidence. Therefore, the state has demonstrated Prosecutorial Misconduct by

charging the petitioner on July 23, 1997 with 2 counts of Forgery claiming to have evidence that had been disposed of on January 14, 1997.

## IV

Conclusion

Based on the foregoing authorities and arguments, Petitioner respectfully request his Petition for Writ of Habeas Corpus be granted.

Respectfully Submitted this 7th day of June, 2006

                    Petitioner

                    Anthony Harris, pro se #85014
                    Arizona State Prison - Lewis
                    Buckmon / Red Yard
                    P.O. Box 3500
                    Buckeye, Arizona 85326

Copies of the foregoing were deposited for mailing this 8th day of June, 2006 to,

Clerk of The District Court
401 W. Washington Street, SPC-1- Suite 130
Phoenix, Arizona 85003

Katia Mehu AAG
1275 W. Washington
Criminal Appeals Section
Phoenix, Arizona 85007